JOHN BALAZS, Bar No. 157287
Attorney at Law
916 Second Street, Suite F
Sacramento, CA 95814
Telephone: (916) 447-9299
John@Balazslaw.com

Attorney for Defendant
LOURDES GIOVANNINI

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 08-0573-FCD |
| Plaintiff, | ) | |
| v. | ) | DEFENDANT LOURDES GIOVANNINI'S *REVISED* SENTENCING MEMORANDUM, INCLUDING OBJECTIONS TO PRESENTENCE REPORT |
| LOURDES GIOVANNINI, | ) | |
| Defendant. | ) | |

## I.   INTRODUCTION

Defendant Lourdes Giovannini is a 47-year old woman who comes before the Court for sentencing for embezzling from her employer during a period of extreme emotional and financial stress when her husband was working as an eye surgeon in Afghanistan with the U.S. Air Force.  She has no criminal history, is extremely remorseful, and accepts full responsibility for her conduct.  Ms. Giovannini requests that the Court follow the plea agreement in this case which stipulates to the proper guideline range of 30-37 months and a government recommendation for a low-end sentence.[1]  For the reasons set forth below, a 30 months sentence is warranted in this case as sufficient, but not greater than

---

[1]    In its Sentencing Memorandum, the government states that, if the Court finds a higher sentencing range, the government would recommend a sentence of 37 months in light of the plea agreement and all the § 3553(a) factors in this case.

necessary, to fulfill the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Such a sentence is an exceedingly severe sentence for a woman with no prior record and consistent with--if not greater--than the sentence imposed in other embezzlement cases.  Indeed, all available sentencing research indicates that it is the certainty of punishment--not length of a sentence--that best deters future crimes and otherwise serves the purposes of sentencing.

Attached to Ms. Giovannini's original Sentencing Memorandum filed November 9, 2009 are letters from Ms. Giovannini and her husband U.S. Air Force Colonel Joseph Giovannini, as well as her daughter Violeta Giovannini, her sister Minerva de La O, and her mother Conception Estela Contreras Alcaraz.

Attached to this Memorandum are additional letters from Harry Bingham, Jr. M.D., Cindi Gardner, and B. Shayla Frank.  A letter from a treating therapist, Debra Smith, Ph.D., was previously submitted under seal.  Ms. Giovannini's husband, Col. Joseph Giovannini, has also asked to address the Court at sentencing.

## II.  SENTENCING PROCEDURE

As a result of *United States v. Booker,* 543 U.S. 220 (2005), the Sentencing Guidelines are now advisory, not mandatory.  After *Booker*, the sentencing judge "should begin all sentencing proceedings by calculating the applicable guideline range."  *United States v. Gall,* 128 S.Ct. 586, 596 (2007).  The guidelines are still "the starting point and the initial benchmark." *Kimbrough v. United States,* 128 S.Ct. 558, 574 (2007).  The government bears the burden of proving all guideline enhancements by a preponderance of the evidence and, upon objection, the Court cannot rely on statements in a presentence report to apply an enhancement.  *United States v. Ameline,* 409 F.3d 1073, 1085-86 (9th Cir. 2005) (en banc).  Moreover, the

district court may not presume that the guideline range is reasonable and should not give the Guidelines factor more or less weight than other of the § 3553(a) factors. *United States v. Carty,* 520 F.3d 984, 991 (9th Cir.) (en banc), *cert denied,* 128 S.Ct. 2991 (2008). "After giving both sides the opportunity to argue for whatever sentence they deem appropriate, the sentencing court should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. *Gall,* 128 S.Ct. at 596. "The overarching statutory charge for a district court is to 'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." *Carty,* 520 F.3d at 991.

III.   THE COURT SHOULD FOLLOW THE PLEA AGREEMENT AND FIND MS. GIOVANNINI'S GUIDELINE RANGE TO BE 30-37 MONTHS WITHOUT THE INCREASED LOSS AND ABUSE OF TRUST ENCHANCEMENTS SET FORTH IN THE PSR.

The plea agreement in this case was well thought out and entered into only after extended negotiations. The parties stipulated that the guideline loss range was between $200-$400,000 and that no other enhancements not set forth in the plea agreement are justified. Plea Agreement at 6, ¶VIB. Under the parties agreement, the guideline range is 30-37 months. *Id* at 7, ¶VIB(9). The government agreed to recommend the bottom of the range, or 30 months, and agreed that the defense could argue for a small 6-month sentence reduction under § 3553(a). *Id* at 3, ¶III(B)(1). The plea agreement includes a limited waiver of appeal that applies *only if the Court follows the stipulations in the plea agreement*. *Id*. at 9, ¶VIIB.

The presentence report recommends a higher guideline range by including a 14-level loss enhancement for a guideline loss of just over $400,000, rather than

the 12-level enhancement called for in the plea agreement.  The report also recommends an abuse of trust enhancement that was rejected in the plea agreement.  Neither enhancement is supported by the facts and thus both should be denied.

### A.   The Court Should Find A Guideline Loss of $396,544.37 And A 12 (Rather Than 14) Level Loss Enhancement.

In terms of guideline loss, the parties included in the loss calculations the full amount that Ms. Giovannini embezzled from the medical group, that is, $392,223.12.  This should be the guideline loss, which corresponds to a 12-level increase.  The presentence report adds an additional $14,789.94 in alleged cell phone expenses that the medical group paid for phones used by Ms. Giovannini and her family.  PSR at 8, ¶18 & at 11-12, ¶31.  With the exception of $4,321.25 in cell phone expenses, this extra expense should not be included in the *guideline* loss calculations for a number of reasons.  The $4,321.55 is for two cell phones for which Ms. Giovannini is responsible, i.e., $1,988.59 for 530-503-5049 and $2,332.66 for 530-903-6518.  First, Ms. Giovannini also provided the probation officer and prosecutor with documentation of other business expenses that she paid for out of her own pocket, such as the monthly gotomypc.com fees.  These types of other expenses, such as cell phone or computer expenses, are not part of the embezzlement conduct for this offense and any loss figure should be offset by expenses Ms. Giovannini paid for the Medical Group.  Indeed, a precise loss figure is not required.  Rather, the "court need only make a reasonable estimate of the loss."  U.S.S.G. § 2B1.1, comment. (n.3(C)).

Further, there is insufficient evidence to support the full alleged cell phone charges in the presentence report.  The government bears the burden of proof for any fact that is necessary to determine the base offense level and for any

enhancement to the guideline offense level.  *United States v. Ameline,* 409 F.3d 1073, 1086 (9th Cir. 2005) (en banc).  "When a defendant raises objections to the PSR, the district court is obligated to resolve the factual dispute,…. The court may not simply rely on the factual statements in the PSR." *United States v. Showalter,* 569 F.3d 1150, 1159 (9th Cir. 2009).  Here Ms. Giovannini objects to the over $14,000 in cell phone fees added to the loss calculations in the PSR.  Ms. Giovannini denies she is responsible for all these charges.  Rather, based on our review, other than $4,321.25 for two cell phones for which she agrees she is responsible, the remaining charges appear to be for the Medical Group's office phones and expenses.  Because the government has not established any cell phone loss by a preponderance of the evidence, the Court should include only an extra $4,321.25 in the guideline loss calculation.  Without this amount, the loss should be $392,223.12 (embezzlement) and $4,321.25 (cell phones) for a total of $396,544.37, which corresponds to a 12-level enhancement as the parties stipulated.

**B.     The Court Should Not Include An Abuse Of Trust Enhancement**

Likewise, the Court should not apply the 2-level abuse of trust enhancement under U.S.S.G. § 3B1.3 as set forth in the presentence report.  The parties stipulated that the guideline range is 30-37 months and that neither party "will seek or argue in support of any other specific offense characteristics," including the abuse of trust enhancement.  *Plea Agreement*, at 7, ¶VI(B)(10).  Again, the government bears the burden of proof and the enhancement cannot stand without sufficient evidence that it applies independent of the allegations in the presentence report.

Ms. Giovannini worked at the Medical Group in insurance billings and as an office manager.  Although she did have access to the company's online account, so

did at least one other employee, Ms. Bayona Clark, who was responsible for payroll, online billing, backing up records, and bookkeeping.  She had the same access to the accounts as Ms. Giovannini did.  Online access was also provided to the Medical Group's treasurer, who did not access the system because he was fairly computer illiterate and didn't like the computer system.  Ms. Giovannini did not have the power to sign any authorization to give other people access to the online account.  She also did not have access to the Group's line of credit.

Ms. Giovannini simply did not have a position at the Medical Group that justifies an abuse of trust enhancement.  *See* U.S.S.G. § 3B1.3 (enhancement applies only if the defendant abused a position of trust "in a manner that significantly facilitated the commission or concealment of the offense").  Rather she did medical billing and served as an office manager.  Other employees had access to the online account too.  Significantly, the application notes provide that, for example, the enhancement "applies in the case of an embezzlement of a client's funds by an *attorney serving as a guardian, a bank executive's* fraudulent loan scheme, or the criminal sexual abuse of a patient by a *physician* under the guise of an examination."  U.S.S.G. §3B1.3, n.1 (emphasis added).  In all these cases, the enhancement applies because the attorney, bank executive, or physician held a much greater position of trust than Lourdes did in the instant case.  Ms. Giovannini's position is more akin to other positions where the enhancement does not apply, such as a bank teller, hotel clerk, or officer worker.  A recent Ninth Circuit case confirms this interpretation of the abuse of trust guideline.  *United States v. Contreras,* 581 F.3d 1164 (9th Cir. 2009).  In that case, the Court reversed the abuse of trust enhancement for a prison employee who was involved in smuggling drugs to inmates—*even though her position permitted her unmonitored*

*contact with inmates in the prison kitchen.*  In this case, the stipulation of the parties that the enhancement does not apply is well-justified.

IV.   A 30-MONTH SENTENCE IS WARRANTED TO PROVIDE A SENTENCE THAT IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY, TO SATISFY THE PURPOSES OF SENTENCING SET FORTH IN 18 U.S.C. § 3553(a).

### A.   The Nature and Circumstances of the Offense and Offender Weigh Toward A Lesser Sentence.

A sentence of 30 months imprisonment is sufficient, but not greater than necessary, to support the purposes of sentencing set forth in 18 U.S.C. § 3553(a). This is an unusual case in more ways than one.  Ms. Giovannini has neither substance abuse nor gambling problems.  She is 47 years old and has no criminal record.  She committed the offense during an extremely stressful period in her life, emotionally and financially.  Ms. Giovannini's husband Joseph is a Colonel and eye surgeon in the U.S. Air Force.  He is the flight commander in charge of other surgeons for his division.  At the time of the offense in 2007, Mr. Giovannini was stationed in Afghanistan.  While Ms. Giovannini was here alone, the Giovanninis' then 11-year old son James became ill with a serious problem with his hip.  James was initially misdiagnosed with unstable slipped capital femoral epiphysis (SCFE) after reporting increasing pain in his hip.  The orthopedic surgeon at Travis Air Force Base said James's condition needed urgent treatment with screws in his hip, which would have prevented him from growing properly or playing sports.  The doctor said the diagnosis had been confirmed through X-rays and so he would not authorize an MRI.  Not accepting that answer, Ms. Giovannini took her son to UC Davis Medical Center.  It took her over an hour and a half to move her son from his bedroom to the car.  He was immediately hospitalized there.  Doctors finally determined the correct diagnosis, but only after Ms. Giovannini insisted and agreed

to pay for an MRI and further medical care at UC Davis Medical Center.      As
stated by Dr. George Rab, M.D. in an electronic letter submitted with our informal
objections,

> I cared for James Giovannini at the UC Davis in March 2007, after he was
> urgently referred to me by Dr. Jeffrey Bui, an orthopedic surgeon.
>
> James had initially been diagnosed as a probable slipped epiphysis, but
> because of discrepancies an MRI was ordered and paid for urgently by the
> mother.  The result of the MRI indicated the true diagnosis, which was a
> combination of low-grade pelvic osteomyelitis and Staphylococcus
> pyomyositis.  He was admitted to the Pediatric Ward at UC Davis and
> received intravenous and eventually oral medication, and has subsequently
> recovered from the disorder.

James medical problems were compounded by other medical and financial
problems in Ms. Giovannini's family.  Ms. Giovannini helped her daughter Violeta
and her two children end an abusive relationship with Violeta's husband, and they
all moved in with Ms. Giovannini.  In 2006 and 2007, Ms. Giovannini also paid for
her mother and brother's medical care in Mexico, which included urgent treatment
for her brother's worsening diabetes.  In her letter, Ms. Giovannini's mother states
that she believes Ms. Giovannini saved her brother's life by taking care of his
medical treatments and medications.  Ms. Giovannini also provided significant
financial assistance to her sister, who suffered from physical and sexual abuse by
her former husband.  In short, Ms. Giovannini didn't use the money she unlawfully
obtained for extravagances, but for urgent medial and other expenses for herself
and her family.

Further, Ms. Giovannini herself has experienced abuse in the past and has
been working with a therapist to better deal with feelings of shame and guilt
associated with her conduct in this case and childhood trauma dealing with sexual
and physical abuse.  *See* PSR, at 16, ¶ 53 & 21, ¶77; letter from Debra Smith,

Ph.D.  She has performed well under pretrial services supervision without violation.  Although the PSR lists some information on an unrelated conduct with another employer, these allegations involve conduct that occurred before her initial appearance and were known by the government when it entered into the plea agreement.  Those allegations are not at issue here and, in any event, do not justify a sentence above the plea agreement or higher than 30 months.  Other employers have vouched for her good work history, *see* Letter of Harry J. Bigham, M.D., demonstrating that she has worked well in the past.  Nonetheless, Ms. Giovannini does not object to a condition of supervised release that she not work in the medical industry except with the approval of the probation officer.

The offense occurred during a particularly stressful time in her life when her husband had been deployed by the U.S. Air Force to Afghanistan.  He is expected to return to Afghanistan this year.  This, of course, does not excuse the offense, which is certainly a serious one.  But it provides a reason for some leniency at sentencing.  With no prior criminal history and a supportive husband and family, a greater sentence is not needed to deter Ms. Giovannini in the future or to protect the public.  She understands what she did was wrong and there is no reason to believe she will ever re-offend.

## B.    Ms. Giovannini Returned $48,000 To The Medical Group Shortly After The Offense More Than Two Years Ago.

When Ms. Giovannini first consulted with counsel more than two years ago shortly after she was fired from the Medical Group, she agreed and did return $48,000 to the Medical Group from a savings account, which was all the money the Giovanninis had at the time.  She did so before any charges were filed and demonstrated immediate acceptance of responsibility in doing so.  The Court should encourage defendants to return available funds promptly by taking into

account such conduct at sentencing.  Even if Ms. Giovannini's guideline loss would otherwise be over $400,000, the Court should credit the returned $48,000 under §3553(a) by sentencing her with a loss figure for under $400,000.  While it will be very difficult for the Giovanninis to make substantial restitution in the near future, a long prison sentence will, of course, make it more—not less—difficult for her to pay off her debt to the Medical Group.  The sentencing purpose of providing that the offender pay restitution for the offense supports the plea agreement's 30-months sentence.

### C.     Even A 30-Months Sentence Is More Than Is Typical For This Offense For An Offender With No Criminal Record.

Ms. Giovannini first came to the United States from Mexico on a student VISA.  She has lived here legally as a permanent legal resident for more than 24 years.  She has three children and two grandchildren who are all U.S. citizens.  Unfortunately, Ms. Giovannini never obtained U.S. citizenship for herself and remains a Mexican citizen.

Because the bank and computer fraud charges in counts one and two, respectively, would almost certainly be viewed as aggravated felonies and lead to her automatic removal from the United States, counsel explored alternative ways to resolve this case that would not have such devastating immigration consequences. Ultimately, the prosecutor agreed to defense counsel's proposal for a plea agreement to the charge of damage to a protected computer in count three and dismissal of the fraud counts.[2]  Ms. Giovannini agreed to this plea agreement even though she and counsel knew that it would lead to a *greater* sentence than a

---

[2]     This is the first time defense counsel ever asked for a plea agreement with a higher sentence than he thought he could otherwise receive from the prosecution.

standard plea to either of the fraud charges and dismissal of count three.  Although a conviction under 18 U.S.C. § 1030(a)(5)(A)(1) is not an aggravated felony, the guidelines provide for a four level enhancement if the defendant is convicted under 18 U.S.C. § 1030(a)(5)(A)(i).  *See* U.S.S.G. § 2B1.1(b)(15)(A)(ii).  Unlike other enhancements, this one applies only if the defendant is *convicted* of the charge; it cannot be added as relevant conduct to the count of conviction.  As a result of the added 4-levels, counsel stipulated to a 30-37 months guideline range rather than a 18-24 months range solely to avoid draconian immigration consequences.  The government's recommendation for the bottom of the range, thus resulted in a recommendation for a 30 months, rather than 18 months sentence.  Twelve extra months in prison to avoid immigration consequences is a tough pill to swallow. Any more would be much more than necessary to satisfy the purposes of sentencing in this case.

## V.   MISCELLANEOUS REQUESTS

Ms. Giovannini requests that the Court recommend the women's federal prison in Dublin, California as Ms. Giovannini's husband and children live in Northern California.  Ms. Giovannini also requests that she be permitted to self-surrender.  Finally the Court should offset the restitution ordered in this case by the $48,000 she returned to the Medical Group more than two years ago.

## VI.   CONLUSION

Ms. Giovannini would not be getting off easy with a 30-months sentence. Any prison sentence is a severe sentence, especially for a 47-year old woman which no prior record.  The Court should follow the stipulation of the parties and find the guideline range to be 30-37 months.  The PSR is insufficient to warrant the added enhancements and the government has provided no evidence to support the enhancements.  For the reasons set forth above, the Court should impose a 30-

months sentence of imprisonment as sufficient, but not greater than necessary, to effectuate the purposes of sentencing set forth in 18 U.S.C. § 3553(a). No greater sentence is needed to reflect the seriousness of the offense, promote respect for the law, to provide just punishment, or to afford adequate deterrence. Ms. Giovannini committed the offense during extremely difficult circumstances when her husband was in Afghanistan and she experienced a number of serious medical and financial problems for herself and her family. She gave back $48,000 almost immediately after the fraud was detected. Because Ms. Giovannini does not have a substance abuse problem, she must serve at least 85 percent of her sentence with no reduction for successful completion of a prison drug abuse treatment program. Finally, restitution is best served by Ms. Giovannini's release from prison so she can get back to work and help pay her debts.

Respectfully submitted,

Dated: February 18, 2010

/s/ John Balazs
JOHN BALAZS

Attorney for Defendant
LOURDES GIOVANNINI